UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Ekoue Dodji Aboussa

    v.                                            Case No. 22-cv-284-LM
                                                     Opinion No. 2023 DNH 125 P

State of New Hampshire, et al.


**O R D E R**

Ekoue Dodji Aboussa, pro se, filed this suit against the State of New Hampshire; the New Hampshire Department of Safety ("DOS"); New Hampshire Hospital; the Federal Bureau of Investigation/United States (together, the "United States" or "government"); the City of Concord (the "City"); and Capital Regional Health Care Corporation ("Concord Hospital"). Defendants move to dismiss. Doc. nos. 44 (City motion to dismiss); 45 (Concord Hospital motion to dismiss); 48 (State of New Hampshire and DOS motion to dismiss); 60 (New Hampshire Hospital motion to dismiss); 68 (United States motion to dismiss). Aboussa objects. Doc. nos. 61, 69. The court also has before it Aboussa's motion for a hearing on the pending motions to dismiss. See doc. no. 71.

For the reasons that follow, defendants' motions to dismiss are granted. Aboussa's motion for a hearing is denied.

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that

the pleader is entitled to relief,'" with "enough factual detail to make the asserted claim 'plausible on its face.'" Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 33 (1st Cir. 2022) (quoting, inter alia, Fed. R. Civ. P. 8(a)(2) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  The court's assessment of plausibility "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth., 4 F.4th 63, 70 (1st Cir. 2021) (quoting Iqbal, 556 U.S. at 679).  To make the plausibility determination, the court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the [plaintiff]'s favor," but "credit[s] neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." Legal Sea Foods, 36 F.4th at 33 (quotations omitted).  Generally, the court is limited to consideration of the facts alleged in the complaint, but it may also consider, among other items, documents attached to the complaint, documents the authenticity of which are not disputed, official public records, and documents sufficiently referred to by the complaint.  See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 74 (1st Cir. 2014); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993).

Because Aboussa is representing himself in this matter, the court construes his pleadings liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## BACKGROUND[1]

Although difficult to follow, the main thrust of Aboussa's Second Amended Complaint is that, since 2018, the federal government has been using "psychotronic remote mind control" to "program" or otherwise control him and his family. See generally doc. no. 25.[2]  He alleges that the federal and state governments have been illegally surveilling and tracking his and his family's movements, keeping him and his family's information on unspecified "lists."  The federal government has also been using these "psychotronic" devices to speak to him remotely, and it has told him "what's going to happen, when, where, and how." Id. at 16.  For example, the government has told him "which family member is going to die next domestically or internationally as a result of U.S. energy attacks and intentional use of weapon[s] of mass destruction." Id.

Also in 2018, Aboussa was terminated from his position as an LNA with the New Hampshire Hospital.  Then, in 2021, Aboussa was admitted to Concord Hospital on an emergency basis. See N.H. Rev. Stat. Ann. § 135-C:27-28 (detailing involuntary emergency admission procedure); Doe v. Shibinette, 16 F.4th 894, 898-

---

[1] Aboussa filed a Second Amended Complaint (doc. no. 25) after some of the defendants had filed motions to dismiss.  The court treats the Second Amended Complaint as the operative complaint. See doc. no. 51 at 1.  Because Aboussa proceeds pro se and because he added a number of factual allegations in documents other than the operative complaint, the court has also considered supplemental factual allegations Aboussa made in other filings.

[2] Aboussa has filed several other complaints in this court. See Aboussa v. Community Bridges, Case No. 22-567-SE; Aboussa v. Keystone Mgmt Co., Case No. 23-11-LM; Aboussa v. Central Intelligence Agency, et al., Case No. 23-24-JL; Aboussa v. U.S. Postal Service, et al., Case No. 23-393-LM.

99 (1st Cir. 2021) (discussing involuntary emergency admission procedure). On this point, Aboussa alleges that he was "first held at Concord hospital involuntarily for a long time even though I was no danger to others and was eating and sleeping and then forced to go to New Hampshire hospital." Doc. no. 25 at 12. Aboussa did not provide further details.

Aboussa, however, also filed a transcript of an involuntary emergency admission hearing alongside his complaint. Doc. no. 26. This transcript reveals that Aboussa's family brought him to Concord Hospital in 2021 for emergency treatment because of concerns about his delusional statements and behavior and his refusal to eat. Id. at 6. According to that transcript, Aboussa received emergency medical treatment at Concord Hospital for a severe nutritional deficiency and mental illness for about two weeks before being admitted to New Hampshire Hospital for further treatment. Id. at 8. Then, after a hearing, a state court ordered Aboussa to be involuntarily held for two years at New Hampshire Hospital.

The New Hampshire Supreme Court reversed,[3] however, finding that while Aboussa had been diagnosed with a mental illness which he refused to acknowledge, the state had failed to show by clear and convincing evidence that he was a danger to himself because Aboussa's condition had improved with treatment. See doc. no. 21 (New Hampshire Supreme Court opinion observing that Aboussa's family "brought him to Concord Hospital on a petition for involuntary emergency

---

[3] The New Hampshire Supreme Court's opinion uses a pseudonym to refer to Aboussa. Aboussa filed the opinion with the court and alleges that it is about him.

4

admission" and during "treatment at Concord Hospital, he exhibited some delusional or paranoid thinking; for instance, he said that President Obama was a family friend and lawyer, and that the medical team at Concord Hospital was part of an FBI plot"); see also doc. no. 26 at 9 (testimony of treating psychiatrist stating "I think he was in danger to himself when he first was brought to Concord Hospital, and then . . . I would not say he's putting himself in danger currently. . . . I worry that he doesn't have any insight into his illness and that he'll stop eating after he leaves again, and . . . he'll be back in medical peril.").

In his Second Amended Complaint, Aboussa appears to allege that the government's "programming" and mind control have been motivated by his race and led to the termination of his employment at the New Hampshire Hospital and his committal at the Concord Hospital and New Hampshire Hospital. Throughout his complaint, Aboussa identified numerous statutory, constitutional, and other grounds for his claims against the defendants.[4]

---

[4] These grounds include, among many others, the Fourth, Fifth, and Eighth Amendments to the United States Constitution; numerous criminal statutes under Title 18 of the United States Code; the Civil Rights Acts of 1967 and 1991; the Equal Pay Act of 1963; the Genetic Non-Discrimination Act of 2008; the Administrative Procedure Act; the Freedom of Information Act; the Securities Exchange Act of 1934; the Gramm-Leach-Bliley Act; the Cyber Security Information Sharing Act of 2015; the Federal Information Security Management Act of 2002; the Federal Information Security Modernization Act of 2014; the Foreign Intelligence Surveillance Act of 1978; 42 U.S.C. § 2451(a) ("The Congress declares that it is the policy of the United States that activities in space should be devoted to peaceful purposes for the benefit of all mankind."); the Universal Declaration of Human Rights; and the United Nations Convention Against Torture and Other Cruel, Inhuman, and Degrading Treatment or Punishment. To the extent Aboussa alleges violations of criminal statutes against defendants, said statutes do not empower private citizens to institute criminal proceedings and those claims are dismissed for that reason. See Cok v. Cosentino,

## DISCUSSION

Defendants move to dismiss Aboussa's Second Amended Complaint. Generally, defendants contend that the Second Amended Complaint, construed liberally, lacks any factual matter and fails to connect any factual allegations to the numerous authorities under which Aboussa purports to bring claims. The State of New Hampshire, New Hampshire Hospital, and the New Hampshire Department of Safety also assert sovereign immunity.

Aboussa objects. He primarily reiterates that the government has used mind control on him because of his race. See doc. no. 61 at 2 ("Plaintiffs' complained on the record . . . with respect to the Federal Bureau of Investigation program[m]ing him with the use of electronic tracking communication system; human remote mind controlled. Talking to him from distance with the radar 24/7; steering Americans gravitating toward him in an endless harassment. Due to being a male person of color and having a wedding photograph business while employed helping the people of New Hampshire . . . ."); id. at 4 ("As plaintiffs seek for cognizable injunctive relief concerning illegal program[m]ing with psychotronic human remote mind controller."); doc. no. 69 at 2 ("Respectfully; that [Aboussa's] rights were further

---

876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983)[] . . . .").

violated by the program[m]ing of the United States' Federal Bureau of Investigation.").

To start, fantastic or irrational allegations, though pleaded in a complaint, do not support any claim and indeed the court lacks subject-matter jurisdiction to even entertain them. See, e.g., Lawrie v. Lemoore Air Force Base, No. 12-cv-91 AWI GSA, 2012 WL 2617601, at *1 (E.D. Cal. July 5, 2012) ("Plaintiff's claim, while no doubt substantial in his own mind, is the product of delusion and is completely insubstantial so far as this or any court would be concerned.  A court may find [it] lacks subject matter jurisdiction pursuant to Rule 12(b)(1) where the claim or claims are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'") (quoting Neitzke v. Williams, 490 U.S. 319, 327 n.6 (1989)); see also Ashcroft v. Iqbal, 556 U.S. 662, 696 (2009) (Souter, J., dissenting) ("[A] court must take the allegations as true, no matter how skeptical the court may be. . . .  The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.").  Aboussa's complaint is almost entirely premised on allegations that the government has "programmed" him, his family, and some of the defendants as well.  According to Aboussa, this mind control – potentially initiated because of racial animus – led to his termination from New Hampshire Hospital, his involuntary emergency admission to Concord Hospital and New Hampshire Hospital, and other harms.  Aboussa's claims, to the extent they are related to allegations of mind control by the government must be dismissed.

7


See, e.g., Aboussa v. Keystone Mgmt. Co., No. 23-cv-11-LM, 2023 WL 5311620, at *3 (D.N.H. June 27, 2023) (collecting cases and recommending dismissal of Aboussa's similar allegations in a different case on the same grounds), R&R adopted, 2023 WL 5308009 (Aug. 16, 2023).

This covers the majority of any possible claims Aboussa might be attempting to raise, and, at minimum, all of Aboussa's claims against the United States and the City.[5]  Further, because Aboussa's allegations against the other defendants are so intertwined with his belief that the government is harassing him and his family using mind control, this dismissal essentially covers his allegations against all defendants.  Nonetheless, the court will briefly address what it reasonably can of Aboussa's apparent claims against the other defendants, stripped of these irrational allegations.

Most of Aboussa's pleading merely recites laws and constitutional provisions without factual allegations that connect to the rules provided by these authorities. See generally doc. no. 25.  Bare allegations that the defendants violated a lengthy

---

[5] Aboussa's claims against the City appear to relate to alleged harassment related to the government's mind-control, though it is unclear what, exactly, Aboussa alleges the City did.  As the City asserted in its motion, "it is impossible to understand [Aboussa's] legal theories against the City."  Doc. no. 44-1 at 4.  Similarly, even if the court had jurisdiction, Aboussa's claims against the United States are premised on his fantastic or delusional allegations.  As such, he fails to state any claims against the United States for which relief could be granted.  The United States also argues that, in the alternative, Aboussa's complaint should be dismissed for lack of service. See Fed. R. Civ. P. 4(i)(1).  Because the court finds that it lacks jurisdiction to consider Aboussa's claims against the United States because they are the product of delusion (and because there are no claims for which relief could be granted), the court need not reach this issue.

recitation of laws, without facts which indicate in any way how defendants violated those laws, do not suffice to survive a motion under Rule 12(b)(6). For example, Aboussa appears to allege that he was terminated from his employment with New Hampshire Hospital because of his race. But less the mind-control allegations, Aboussa's pleadings fail to set forth any facts to support discrimination claims. Other than observing that he was terminated around the same time the government began "programming" and surveilling him and a generalized assertion that he was disliked because of his race, Aboussa offered no factual allegations connecting his termination from New Hampshire Hospital to his race. See Aboussa, 2023 WL 5311620, at *1-2 (recommending dismissal of similar discrimination claims against Aboussa's landlord). Accordingly, to the extent Aboussa sought to bring any claim of discrimination, it is dismissed for want of factual support.

Aboussa, who denies the existence of his mental illness, also contends that he was illegally committed to New Hampshire Hospital. The State of New Hampshire, New Hampshire Hospital, and DOS raise the defense of sovereign immunity. The Eleventh Amendment bars suits in federal courts against a state unless the state has waived its sovereign immunity or Congress has exercised its power to override sovereign immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). "The Supreme Court has held that a state is not a person within the meaning of § 1983 and, therefore, Congress has not abrogated sovereign immunity in civil rights cases brought under that section." Spencer v. New Hampshire State Police, No. 18-CV-1191-LM, 2019 WL 1546995, at *1 (D.N.H. Apr. 9, 2019). And New

Hampshire Hospital and DOS, as state arms, are therefore also not "persons" for purposes of § 1983. See Fantini, 557 F.3d at 33. Thus, insofar as Aboussa's claims against them are not irrational or fantastic, the State of New Hampshire, New Hampshire Hospital, and DOS are entitled to sovereign immunity in any event.

Finally, Aboussa alleges that he was illegally held by Concord Hospital. He identifies the basis for his claims as the Eighth Amendment and assorted other statutory provisions. The court will not go through these one by one, as the facts are insufficient to support any cause of action. The documents that Aboussa submitted in support of his complaint show that he was brought to Concord Hospital by his family for treatment because he had stopped eating and was expressing delusional thoughts. Aboussa, however, claimed then, as he does now, that he had no mental illness; that everything was "simply discrimination"; and that these events were all part of a government conspiracy to program him. Doc. no. 26 at 41.

Again, Aboussa alleges no facts indicating discriminatory animus by the relevant defendants. See Aboussa, 2023 WL 5311620, at *2. And, although it reversed the state court's order permitting any further involuntary psychiatric hold, the Supreme Court did not suggest that Aboussa was incorrectly diagnosed with a mental illness or that Concord Hospital inappropriately provided emergency treatment to Aboussa per Rev. Stat. Ann. § 135-C when his family brought him there. At bottom, the facts as alleged do not indicate that Aboussa suffered any cruel and unusual punishment after having been convicted of a crime in violation of

10

the Eighth Amendment or that there is any actionable claim against Concord Hospital buried somewhere underneath Aboussa's fantastic assertions. See Off. of Pub. Guardian v. Elliot Hosp., 630 F. Supp. 3d 345, 356 (D.N.H. 2022) ("There are no facts or allegations in this case that Brunelle was subject to cruel and unusual punishment after having been convicted of a crime. There are thus no facts or allegations supporting claims under the Eighth Amendment."). To the contrary, Aboussa's pleadings show that Concord Hospital provided Aboussa with necessary emergency treatment. E.g., doc. no. 26 at 27 (indicating that Aboussa's nutritional deficiency and refusal to eat when he was initially admitted to Concord Hospital was life threatening).

## CONCLUSION

At bottom, Aboussa's allegations are no more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" premised in large part on his delusional belief that the government is engaged in a conspiracy to control his mind and the minds of his family members. See Ashcroft, 556 U.S. at 678. As explained in Aboussa v. Keystone Management, although the court has no reason to question Aboussa's sincerity regarding them, "[h]is allegations of harassment stemming from 'remote mind control' are precisely the sort of allegations that courts, including this one, have dismissed as factually frivolous. . . . To allow this case to proceed any further would be a waste of limited judicial resources." 2023 WL 5311620, at *3. Aboussa's Second Amended Complaint is dismissed. Defendants' motions to dismiss

are granted (doc. nos. 44, 45, 48, 60, and 68).  Aboussa's motion for a hearing (doc.

no. 71) is denied.  See LR 7.1(d) ("Except as otherwise provided, the court shall

decide motions without oral argument.").  The clerk of court shall close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 28, 2023

cc:  Ekoue Dodji Aboussa, pro se

Counsel of Record

12